NO. 4-96-0632

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

VALERI DECASTRIS,                       )    Appeal from

          Plaintiff-Appellant,          )    Circuit Court of

          v.                            )    Sangamon County

THE STATE EMPLOYEES RETIREMENT          )    No. 95MR325

SYSTEM OF ILLINOIS, and MICHAEL         )

MORY, as Executive Secretary,           )    Honorable

          Defendants-Appellees.         )    Donald M. Cadagin,

                                        )    Judge Presiding.

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In March 1994, plaintiff, Valeri DeCastris, an employee

of the State Department of Public Health (DPH), filed a claim for

nonoccupational disability benefits (40 ILCS 5/14-124 (West

1994)) with defendant State Employees Retirement System of

Illinois (SERS).  In October 1995, the SERS Board of Trustees

(Board) concluded that plaintiff had not shown that she was

suffering from a disabling condition and denied her claim.  In

November 1995, plaintiff sought administrative review of the

Board's decision, and in July 1996, the circuit court affirmed.  

          Plaintiff appeals, arguing that the circuit court's

order affirming the Board's decision was against the manifest

weight of the evidence.  We agree and reverse and remand with

directions.

                               I. BACKGROUND

          The underlying facts in this case are undisputed.  DPH

employed plaintiff as a sanitarian II (toxicologist) from March

1992 through February 1994.  Her supervisor described her duties

as involving the "review and interpretation of the environmental

and health data with the purpose of discerning whether an expo-

sure to chemical or physical agents may result in harm to human

or nonhuman life."  Plaintiff handled telephone inquiries regard-

ing exposure to chemicals or physical agents, and she worked out

of the office (field work) approximately two or three times per

month.  With the exception of the field work, plaintiff primarily

had a "sitting job."  The field work varied from a few minutes to

collect a sample to several days to collect multiple samples. 

The field work occasionally required plaintiff to carry sampling

equipment, coolers, or bottles of water.  Her duties also re-

quired her to use a computer and write and interpret scientific

data.  Her supervisor testified that a person who was incapaci-

tated in some "intangible nonphysical way" would have difficulty

performing plaintiff's job.

          In the spring of 1994, plaintiff submitted medical

evidence to SERS in support of her claim for nonoccupational

disability benefits.  The evidence consisted primarily of a

report from Dr. Mark Stern, a physician and rheumatologist who 

had been treating her "for many years" for fibromyalgia, which he

described, in part, as "a condition which produces significant

soft tissue pain as well as a sleep disorder and irritable

bowel."   

          Dr. Stern certified plaintiff was "temporarily, totally

disabled" from both her own occupation and from any occupation. 

However, he stated she could return to work in 30 days.  Dr.

Stern classified plaintiff's physical impairment as a "slight

limitation of functional activity; capable of light work."  He

stated she had full, normal range of motion in all joints and

normal muscle strength, but also noted that fibromyalgia patients

are expected to have normal laboratory test results.  He also

recommended "a disability leave to begin immediately," explaining

that fibromyalgia "is a condition that leads to chronic pain or

persistent discomfort."  

          On July 22, 1994, the SERS claims division sent a

memorandum to Dr. Edward G. Ference, identified in the memorandum

as "SERS Chief Medical Consultant," informing him of plaintiff's

claim and asking him to review the medical information on file

"and make a recommendation as to the existence of a disability." 

          Four days later, Dr. Ference responded in a memorandum

that he recommended denial of plaintiff's claim.  Despite not

having examined--or even seen--plaintiff himself, Dr. Ference

disagreed with Dr. Stern's diagnosis of fibromyalgia.  In its

entirety, Dr. Ference's memorandum reads as follows:  

               "This employee claims disability bene-

          fits because of chronic fatigue syndrome and

          fibromyalgia.  She has a sedentary work job

          description.  She is being treated with

          Zoloft.

               Actually, she has an anxiety syndrome. 

          All her laboratory findings are normal.  She

          is obese weighing 191-1/2 pounds.  (Dr. Stern

          calls this fibromyalgia.)

               The activities of daily living are much

          more stressful and require more strength than

          the job description of this employee.  I do

          not believe she is disabled from her regular

          job."  (Emphasis added.)

          Two days later, a SERS claims examiner sent plaintiff a

letter informing her that her file "ha[d] been reviewed by the

[SERS'] medical director" and that SERS was temporarily denying

her claim (pending review by the SERS Executive Committee (here-

after the Committee)) because "it is the [SERS'] opinion that a

disabling condition has not been established."

          In August 1994, the same claims examiner wrote to

plaintiff that the Committee had met "and moved to deny [her]

benefits."  The examiner further informed plaintiff that "[t]his

constitutes the initial disposition" of her claim by the Commit-

tee, but she could appeal this decision and ask for a personal

appearance before the Committee. 

          In September 1994, plaintiff hired an attorney, who

pursued the appeal on her behalf.  He obtained further reports

from Dr. Stern, who provided additional descriptions of plain-

tiff's condition, including the following:  

               "The patient's ability to function in a

          work environment depends on [her] level of

          pain and fatigue[,] which is not easily and

          objectively measured.  ***

               Due to pain, fatigue and global sense of

          disease, some patients find working impossi-

          ble and cannot be able to maintain gainful

          employment.  ***  [Assessments of such pa-

          tients] cannot be gauged the same way as the

          patient who has had loss of limb, vision or

          stroke and should be taken in consideration

          just as well."  

          Plaintiff also had Dr. Scott Morton, another rheumatol-

ogist, examine her, and he concurred in Dr. Stern's diagnosis. 

He wrote in his report, however, that although plaintiff was

"temporarily, totally disabled" from her own occupation due to

the high level of stress and the physical tasks she was required

to do, she was not disabled from all occupations.  He thought her

disability should continue for an additional 60 days.  Dr. Morton

described as "moderately severe" plaintiff's degree of restric-

tion of daily activities, including her ability to "attend

meetings (church, lodge, etc.), work around the house, socialize

with friends and neighbors."  He defined "moderately severe

impairment" as one which "seriously affects the ability to

function."  Regarding her ability to do her job, he concluded

that she had a "moderate" impairment in her ability to under-

stand, remember, and carry out detailed or complex instructions

but had no impairment in her ability to understand, remember, and

carry out simple job instructions.

          Plaintiff's counsel indicated to SERS that plaintiff

wished to appear before the Committee and would be providing

further medical material.  A handwritten note in the SERS file on

plaintiff, dated October 12, 1994, states that plaintiff's

attorney "wants to cross-examine Dr. Ference."  However, Dr.

Ference never appeared in person at any Committee hearing con-

cerning plaintiff and was never cross-examined.  The file con-

tains no other reference to the matter.

          Plaintiff appeared with her counsel at the Committee's

December 1994 meeting and testified as follows:  (1) several

physicians, including Dr. Stern and Dr. Morton, have treated her;

(2) her job required her to review complex data from the private

and public sector regarding hazardous waste in water and on land,

write technical reports, and interact with the public and various

agencies; (3) she was also required to leave the office approxi-

mately twice per week to do field work, consisting of collecting

samples and reviewing files; (4) when she did field work, the

heaviest object she had to carry was 20 pounds, and in the

office, she had to carry several boxes of files; and (5) she was

required to deal with incoming calls from people who believed

they had been exposed to toxic chemicals, and these calls created

stress for her.

          Plaintiff had been in her current position for approxi-

mately two years.  Previously, she worked at DPH as a microbiolo-

gist.  She testified she was very ill at that time and had the

Epstein-Barr virus.  She was fatigued and could not stand at the

lab desk.  She experienced problems with increased pain migrating

to other areas of her body.  She also suffered from irritable

bowel and bladder syndrome.

          At the Committee's December 1994 meeting, plaintiff

indicated she would submit additional medical information,

including a report of an examination of plaintiff by Dr. Muhammad

Yunus, a rheumatologist who is an expert on fibromyalgia and the

author of numerous medical journal articles on that subject.  The

Committee deferred the case pending receipt of the additional

medical information and evaluation.

          Subsequently, plaintiff submitted extensive additional

medical records and reports of her examination by Dr. Yunus,

other physicians, and medical specialists (physical therapists,

et cetera), as well as articles from medical journals describing

the diagnosis and treatment of fibromyalgia.  Dr. Yunus found

that plaintiff exhibited prominent fibromyalgia symptoms.  In

sum, these documents comprise over 100 pages of material.

          In response, Robert Hicks, supervisor of the SERS

disability section, wrote to Dr. Ference and asked him to review

plaintiff's case again "to determine if there is documentation of

disability."  In March 1995, Dr. Ference responded (again without

examining or seeing plaintiff), noting that an "MRI of [plai-

ntiff's] neck, done December 5, 1994, shows some narrowing of her

disc space and some arthritic changes.  There is some bulging of

her disc.  There is not cord or nerve root compression."

          Dr. Ference's (initially handwritten) report concluded

as follows:

               "A letter, dated August 26, 1994, from

          Mark Stein [sic], M.D., a rhematologist

          [sic], was in file.  It was non-specific

          about [plaintiff's] impairment with

          'fibromyalgia.'  There are also two reprints

          in file, from Dr. Yunus dated February, 1990,

          and Donna Howley, et al., dated 1988.  This

          last article is not by an M.D.

               Again, based on the evidence in file and

          her job description of sedentary work, I do

          not believe she is disabled from her regular

          job.  Activities of daily living involve more

          than sedentary work."

However, a careful reading of these articles (which are in the

record before us) reveals that Howley was a professor of nursing

and her coauthor not only was a medical doctor, but specifically

distinguished in the field of fibromyalgia.  

          In April 1995, the deposition of plaintiff's DPH

supervisor was taken, and plaintiff asked SERS to consider all

the evidence before it.  Hicks sent a memo to Dr. Ference again

asking him to review plaintiff's file.  Dr. Ference responded

shortly thereafter--yet again without examining or seeing plain-

tiff--and in a six-line report (one line of which was devoted to

pointing out how he had twice before examined this same file), he

concluded that "[t]here is nothing added to this file from my

last review that has changed my opinion that this employee is not

disabled from her regular job."

          In late June 1995, plaintiff submitted an additional,

updated report from Dr. Stern to SERS.  Hicks, in turn, sent the

new material to Dr. Ference, asking him "to review and comment." 

In response, Dr. Ference submitted his fourth--and last--report

in this case, which in its entirety reads as follows:  

               "I have reviewed this file before (three

          times).

               Again, there is nothing new added to the

          file that would change my opinion from the

          three prior reviews.  She can perform her

          regular duties."

As before, Dr. Ference submitted this report without examining or

seeing plaintiff.  

          In July 1995, the Committee voted to recommend that the

Board deny plaintiff's claim for disability benefits.  In October

1995, the Board followed that recommendation, denied plaintiff's

claim, and issued its "final decision" on the matter.  

          In November 1995, plaintiff filed a complaint in

circuit court seeking administrative review of the Board's

decision, and in July 1996, the circuit court affirmed the

Board's decision.

                               II. ANALYSIS

                              A. Jurisdiction

          Defendants first argue that this court should dismiss

the case because the circuit court lacked authority to review the

Board's decision.  They note plaintiff's complaint for adminis-

trative review named as defendants only the "State Employees

Retirement System of Illinois" and "Michael Mory, as Executive

Secretary."  Defendants maintain that the Board was the final

decision maker in the administrative process, and because the

Board made the final and binding agency decision in this case, it

was a necessary party on administrative review.  We disagree.

          Section 3-107(a) of the Administrative Review Law

(Review Law) provides, in pertinent part, as follows:

          "[I]n any action to review any final decision

          of an administrative agency, the administra-

          tive agency and all persons, other than the

          plaintiff, who were parties of record to the

          proceedings before the administrative agency

          shall be made defendants.

               If, during the course of a review ac-

          tion, the court determines that a party of

          record to the administrative proceedings was

          not made a defendant as required by the pre-

          ceding paragraph, and only if that party was

          not named by the administrative agency in its

          final order as a party of record, then the

          court shall grant the plaintiff 21 days from

          the date of the determination in which to

          name and serve the unnamed party as a defen-

          dant.  The court shall permit the newly

          served defendant to participate in the pro-

          ceedings to the extent the interests of jus-

          tice may require."  735 ILCS 5/3-107(a) (West

          Supp. 1995) (as amended eff. December 15,

          1995).

          In Lockett v. Chicago Police Board, 133 Ill. 2d 349,

354, 549 N.E.2d 1266, 1268 (1990), the supreme court said that

the joinder requirement of section 3-107 of the Review Law is

"mandatory."  In Mudd v. Department of Children & Family Servic-

es, 281 Ill. App. 3d 90, 666 N.E.2d 360 (1996), this court

applied the holding in Lockett to determine whether the director

of Central Management Services was a necessary party under

section 3-107(a) of the Review Law.  The defendants in Mudd

argued that the director was a necessary party because the final

order of the Illinois Civil Service Commission stated the order

was "'certified to [him]'" for enforcement, and also stated he

had approved the charges for dismissal.  Mudd, 281 Ill. App. 3d

at 92, 666 N.E.2d at 362.  In Mudd, this court noted that Lockett

did not say joinder was a jurisdictional requirement.  Further,

in McGaughy v. Illinois Human Rights Comm'n, 165 Ill. 2d 1, 12,

649 N.E.2d 404, 410 (1995), the supreme court explained that

although the joinder requirement was mandatory, it was not

jurisdictional.  

          Finally, in Mudd, as here, the question of lack of

joinder was not raised before the circuit court.  In Mudd, this

court deemed the issue waived because it did not involve juris-

diction.  Mudd, 281 Ill. App. 3d at 92-93, 666 N.E.2d at 362. 

Accordingly, although plaintiff failed to name the Board as a

defendant within the meaning of section 3-107 of the Review Law,

we conclude--based on Mudd--that defendants have waived the issue

of lack of joinder.  

                           B. Standard of Review

          Judicial review under the Review Law extends to all

questions of law and fact presented by the entire record.  The

Review Law mandates that this court deem the findings and conclu-

sions of an administrative agency on questions of fact prima

facie true and correct and not disturb them unless they are

against the manifest weight of the evidence.  735 ILCS 5/3-110

(West 1994).  In Abrahamson v. Illinois Department of Profession-

al Regulation, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992),

the supreme court noted that the court's function under adminis-

trative review is to ascertain whether the findings and decisions

of the agency are against the manifest weight of the evidence,

and they are against the manifest weight of the evidence only if

the opposite conclusion is clearly evident.  The mere fact that

an opposite conclusion is reasonable or that the reviewing court

might have ruled differently will not justify reversal of the

administrative findings.  However, in Cherington v. Selcke, 247

Ill. App. 3d 768, 776, 617 N.E.2d 514, 519 (1993), this court

noted that this rule does not relieve a reviewing court of its

duty to examine the evidence in an impartial manner and to set

aside an order which the evidence does not support.

                      C. The Administrative Decision

          Plaintiff argues here that the Board's decision must be

set aside because it lacks evidentiary support.  We agree. 

          Plaintiff presented substantial evidence from her

treating and examining physicians, most notably Drs. Stern and

Morton, who repeatedly certified plaintiff was disabled due to

fibromyalgia.  In addition, Dr. Yunus, an expert in the field of

fibromyalgia, evaluated plaintiff twice and concurred that she

exhibited "prominent symptoms of fibromyalgia."  

          The only contrary "evidence" (using the term liberally)

appeared in Dr. Ference's reports.  However, he never saw plain-

tiff--much less examined her--and dismissed the diagnosis of her

fibromyalgia without providing any basis for his opinion.  Nor

does the record contain any explanation--or justification--for

his disregard of the other physicians' diagnoses.  Moreover,

while Drs. Stern, Morton, and Yunus are rheumatologists, the

record contains no evidence (indeed, no hint) of Dr. Ference's

background or specialty.  

          Plaintiff presented ample evidence to establish a prima

facie case of disability.  By presenting only Dr. Ference's

reports, SERS failed to rebut plaintiff's evidence, particularly

in view of the manifest deficiencies in Dr. Ference's reports.  

          This case does not involve a disagreement among experts

as to the extent of a plaintiff's injury or illness, such as is

frequently the case when experts differ about, say, how quickly a

plaintiff's damaged vertebrae might heal and how much permanent

disability a plaintiff might suffer as a result of the injury. 

Instead, this record reveals a dispute among the medical witness-

es as to whether a diagnosis of fibromyalgia bears any medical

legitimacy at all.  This distinction is important because it

removes this case from the routine-medical-dispute situation

where this court's deference to the fact finder should be very

high.  In the present case, this court must first evaluate the

sufficiency of the evidence in this record to support Dr.

Ference's rejection of fibromyalgia as a legitimate medical

condition.  We find none, and at oral argument, defendants could

not point to any, either.  

          Plaintiff presented ample evidence from three physi-

cians who are specialists in rheumatology that she has a disease,

fibromyalgia, and her doctors have certified that her disease is

disabling.  The only contrary "evidence" SERS presented was that

Dr. Ference doubts the medical legitimacy of fibromyalgia, yet

neither SERS nor Dr. Ference provided any basis for his opinion--

or his expertise.  Accordingly, we hold that the Board's reliance

on Dr. Ference's opinion was against the manifest weight of the

evidence.

                              III. CONCLUSION

          For the reasons stated, we reverse the circuit court's

judgment and remand to that court with directions to remand to

the agency with directions to award benefits to plaintiff.

          Reversed and remanded with directions.

          McCULLOUGH and COOK, JJ., concur.