THOMAS CHERINGTON, Plaintiff-Appellee, v. STEPHEN F. SELCKE *et al.*, Defendants-Appellants.

Fourth District   No. 4—92—0731

Argued June 22, 1993.—Opinion filed July 29, 1993.—
Rehearing denied August 27, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General (argued), of Chicago, of counsel), for appellants.

Jerry L. Brennan (argued), of Keefe, Gorman & Brennan, of Quincy, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendants appeal an order of the circuit court of Adams County, finding the revocation of plaintiff's producer's license by the Director of the Illinois Department of Insurance (Department) was against the manifest weight of the evidence. We reverse, and reinstate the Director's decision to revoke.

On June 28, 1989, the Director of the Department issued an order revoking plaintiff's license, pursuant to section 505.1 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1). This initial order of revocation alleged plaintiff sold two annuity policies through First Columbia Life Insurance Company (First Columbia) at a time when the company was not authorized to transact insurance business in Illinois. Based on these actions, the Director determined plaintiff wilfully violated section 122 of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 734), which was a ground for revocation under section 505.1(a)(1) of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1(a)(1)). It was also alleged plaintiff "used fraudulent, coercive or dishonest practices, or ha[d] demonstrated incompetence, untrustworthiness or financial irresponsibility," in transacting business, which was a further ground for revocation under section 505.1(a)(6). (Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1(a)(6).) The Director determined plaintiff demonstrated incompetence, untrustworthiness, and financial irresponsibility in violation of the section by selling the two policies for an unauthorized and financially unsound company.

Section 505.1(a) of the Code provides, in pertinent part:

"Any license issued under this Article may be suspended or revoked, and any application for a license may be denied, if the Director finds the licensee or applicant

(1) has *wilfully* violated any provision of this Code or any rule or regulation promulgated by the Director; [or]

\* \* \*

(6) has, in the transaction of business under his license, used fraudulent, coercive or dishonest practices, or has demonstrated incompetence, untrustworthiness or financial irresponsibility." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 73, pars. 1065.52—1(a)(1), (a)(6).

Section 121(1) of the Code provides "[i]t shall be unlawful for *any company* to enter into a contract of insurance as an insurer or to transact insurance business in this State, without a certificate of authority from the Director." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 73, par. 733(1).) Section 122 of the Code goes on to say "[i]t shall be unlawful for *any person* as officer, director, clerk, employee or agent, to serve or represent any company in connection with any act performed or contract entered into in violation of any of the provisions of Section 121." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 73, par. 734.) Section 121—3(f) of the Code defines the "transaction of insurance business" as follows:

"[d]irectly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the solicitation, negotiation, procurement or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, \* \* \* or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this State." Ill. Rev. Stat. 1989, ch. 73, par. 733—3(f).

Plaintiff requested a hearing regarding the revocation of his license (see Ill. Rev. Stat. 1989, ch. 73, par. 1065.52—1(b)), at which time the following facts were adduced. Plaintiff was originally licensed through the Department in 1979 and has held that authority continuously. He joined Bates Securities, Inc., in 1985; through the Bates company, he was limited to selling securities and variable annuity contracts. To be able to sell insurance products, such as annuities on life, disability or health insurance, he was allowed to contract as an independent agent. Through Bill Smith, a fellow representative of Bates Securities, Inc., and a general agent for

Munico, plaintiff became associated with Munico, a national marketing firm that solicits independent insurance agents to sell insurance products for insurance companies which do not retain their own captive sales force. Through the general agent and Munico, plaintiff first came in contact with First Columbia Life Insurance Company of Des Moines, Iowa (First Columbia of Iowa). At the time he became involved with First Columbia of Iowa, he did not check to see whether it was licensed to do insurance business in Illinois. Rather, he relied on the expertise of Bill Smith, the general agent, who confirmed it was licensed in Illinois.

On February 5, 1986, plaintiff sold Etta Pribble a single-premium deferred annuity policy in the amount of $100,000 with First Columbia of Iowa, and on March 16, 1988, he sold her a second annuity policy in the amount of $65,000 with First Columbia. Plaintiff also sold Edith Pfaffe an annuity policy on March 21, 1988, in the amount of $68,000 with First Columbia. From November 1985 to March 1988, plaintiff sold a total of 13 policies through First Columbia and during this time period he also sold annuities for other companies. In selling an annuity, plaintiff looked at the rate of return companies were providing on their contracts. At the time he wrote the policies at issue, First Columbia was paying a higher rate of interest than other companies he was licensed with. He, however, did not check to determine whether the company was licensed to conduct insurance business in Illinois.

First Columbia of Iowa (domiciled in Des Moines, Iowa) was licensed to transact insurance business in Illinois in 1983 or 1984. In 1986, the Department became aware that the Iowa Department of Insurance had conducted an examination of the company and had discovered the company had financial problems. The Iowa Department of Insurance eventually entered into an order of rehabilitation with the company. While the Department deemed the company financially impaired, it did not forward this information to the company's agents. The company never emerged from the order of rehabilitation. Rather, on October 15, 1986, it merged into a Louisiana domiciled company, First Columbia Life Insurance Company of Louisiana (First Columbia of Louisiana), and the surviving company simultaneously changed its name to First Columbia Life Insurance Company (First Columbia). Due to its merger with First Columbia of Louisiana, First Columbia of Iowa ceased to exist and consequently was no longer licensed to transact insurance business in Illinois. First Columbia of Louisiana never obtained certification to transact insurance business in Illinois, although it made an applica-

tion to do so and supplemented that application several times. Under Illinois law, when a foreign company authorized to transact business in Illinois merges and such company is not the surviving company, the certificate of authority of such foreign company to transact business is terminated and the surviving company, if not previously authorized to transact business in the State, must procure a new certificate of authority. (See Ill. Rev. Stat. 1991, ch. 73, par. 729(3).) A representative from the Department testified it was conveyed to the company that it had lost its authority to transact insurance business in Illinois. The Department was unaware of whether the company conveyed this information to its agents, but the Department itself did not send any notification to plaintiff or any other agent regarding the company's loss of license.

Sometime after the merger, First Columbia declared bankruptcy. In December 1988, Etta Pribble received a letter informing her First Columbia had been placed in liquidation. Plaintiff later inquired whether she had received the letter and then explained to her the company had gone bankrupt. He completed a proof of claim form on her behalf, claiming First Columbia of Iowa was indebted to her for $200,470.47 for the two annuity policies she purchased. At the time he filled out the claim, plaintiff indicated to Pribble that he believed that if the company did not pay the claim, the State of Illinois would reimburse her for any loss sustained through the Illinois guaranty fund. That information was not correct; the fund covers losses only if the company causing the loss is authorized in Illinois. (See Ill. Rev. Stat. 1989, ch. 73, par. 1065.80—1 *et seq.*) As of the date of the hearing, Pribble had not recovered any part of her loss, but had continued to do business with plaintiff. She indicated the annuity money represented half of her life savings.

Edith Pfaffe also received a letter from the Louisiana Department of Insurance indicating First Columbia had gone into liquidation. After receiving the letter, plaintiff assured her any loss sustained was insured by the State of Illinois. She also submitted a proof of claim form to the liquidator of First Columbia but had not received any of the $68,000 owed her at the time of the hearing. This money reflected two-thirds of her savings. Edith Pfaffe maintained an account with plaintiff after notification of the liquidation until the policy matured.

Plaintiff testified he would periodically check the viability of his clients' investments by calling the corporate office of the company in Irving, Texas. At no time during these conversations was plaintiff informed a merger had taken place. He first learned of the mer-

ger subsequent to the liquidation and the commencement of these proceedings. Plaintiff was familiar with various publications of A.M. Best, publications which rate insurance companies, and indicated he would occasionally refer to them, but did not refer to them when selling the annuity policies at issue. The 1987 edition of Best's Life and Health Insurance Report specified First Columbia of Iowa had merged with First Columbia of Louisiana and changed its name to First Columbia Life Insurance Company effective October 15, 1986.

Plaintiff stated he did not refer to Best's because he had an ongoing relationship with the company and through statements made by Bill Smith, the general agent, believed the company was licensed in Illinois. Plaintiff admitted he checked the financial condition of mutual fund companies or trusts his clients put money into, but did not check First Columbia because, based on his training, he believed annuities were safe and, if companies were licensed in Illinois, there was no reason not to be doing business with them given the high admitting standards in the State. Plaintiff further testified he never received notification of First Columbia of Iowa's financial difficulty nor did he receive any notification First Columbia of Iowa had merged with First Columbia of Louisiana. He also asserted he did not receive any information indicating the company no longer had authority to do business in Illinois. He maintained that nothing about the company's interest rates, commission schedule, or payment of claims indicated the company had financial problems. Prior to and after the merger, all premiums and applications remitted by plaintiff were sent to First Columbia's corporate office in Irving, Texas.

The Department publishes an annual report which lists all companies licensed in Illinois at the end of that year and provides a summary of financial data compiled on those companies. These reports are public documents which may be obtained from the Department free of charge. The annual report for the year ending December 31, 1985, listed First Columbia of Iowa as a company licensed in Illinois. The annual report for the year ending December 31, 1986, and that for 1987, did not list First Columbia of Iowa, First Columbia of Louisiana, or First Columbia as licensed in Illinois. The information contained in these reports is obtained directly from the Department's data base, which as of December 31, 1986, showed that neither First Columbia of Iowa nor First Columbia of Louisiana was licensed to do business in Illinois. Private citizens have access to the information contained in the data base and can obtain the information by writing or calling the Department.

In all of his time selling annuities, plaintiff asserted he never called the Department to determine whether a company he was selling for was licensed in Illinois, nor was it a usual method of practice to determine if a company was authorized before selling its policies. Similarly, George E. Bates, president and owner of Bates Securities, Inc., and plaintiff's employer, testified it was not the custom and practice of agents to contact the Department in order to determine whether an insurance company was authorized to do business in Illinois or to look at an A.M. Best's rating to determine the financial status of an insurance company. Until the present case, Bates believed that if an insurance company lost its authority to do business in Illinois, the Department would notify its agents.

Based on this evidence, the hearing officer found that, while plaintiff admittedly sold the annuity policies at issue after the company had lost its authority to do insurance business in Illinois, he had no knowledge or reason to know of the merger and the resultant loss of the company's certification. Regardless of the fact the information (that First Columbia of Iowa was an unauthorized insurer) was available from the Department, the hearing officer maintained that, under the circumstances of the case, an unreasonable burden would be placed on the agent if he were required to call the Department prior to selling a policy. Therefore, the hearing officer found the allegation that plaintiff wilfully violated section 122 of the Code was unsupported by the evidence. The hearing officer also indicated plaintiff had no knowledge or reason to know that First Columbia was in poor financial condition prior to his selling the policies at issue. Moreover, nothing in plaintiff's actions showed evidence of incompetency, untrustworthiness, or financial irresponsibility, nor was there evidence of any fraudulent, coercive or dishonest practices in the sale of said policies. Accordingly, the hearing officer recommended the revocation of plaintiff's license be rescinded.

In an order entered October 14, 1991, the Director adopted the hearing officer's findings of fact but rejected her recommendation. He determined that unlike other provisions of the Code, section 122 required no specific showing of intent. Pursuant to the legislative scheme disclosed by sections 121, 121–3, and 122 of the Code, together with the remaining provisions of article VII (Ill. Rev. Stat. 1989, ch. 73, pars. 733 through 735.3), he asserted a clear authority was imposed upon those who transacted insurance business in Illinois to first determine whether they were directly or indirectly participating in the solicitation, negotiation, or procurement of unauthorized insurance. He found it "inconceivable that the legislature

could have intended [the Department] to disregard this strict prohibition by its use of the term 'wilfully' in \*\*\* section 505.1(a)(1)." Such a result, the Director found, would allow a "producer to take hundreds of thousands of dollars from insureds, leave them with a company not subject to this State's solvency, investment, benefit or other regulatory standards and then virtually walk away when the company fails to honor its contracts in this State." Even assuming section 505.1(a)(1) would not allow imposition of an administrative penalty, the Director determined it was "abundantly clear" plaintiff either dishonestly represented himself as an independent agent or performed the role "with a total ignorance of his responsibilities and obligations." Based on this reasoning, the Director revoked, or more properly, refused to rescind the revocation of, plaintiff's producer's license.

Plaintiff's request for a rehearing was denied, and he thereafter sought administrative review of the Director's ruling. The circuit court reversed the Director's order, finding the record devoid of a showing of a wilful violation of the Code or that plaintiff committed fraudulent acts, coercive or dishonest practices, or untrustworthiness in the transaction of business. The court also found the record did not support a finding of incompetence. Defendants thereafter sought administrative review in this court. The only issue on appeal is whether the Director's order was against the manifest weight of the evidence.

■ Upon administrative review, the findings and conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110; see also *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 355, 586 N.E.2d 1273, 1276-77.) It is the decision of the agency, not that of its hearing officer, which is entitled to deference. (*Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 100-01, 454 N.E.2d 265, 269; *Highland Park Convalescent Center, Inc. v. Health Facilities Planning Board* (1991), 217 Ill. App. 3d 1088, 1092, 578 N.E.2d 92, 94.) Reviewing courts may not interfere with the discretionary authority vested in administrative bodies unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, l088; *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board* (1991), 216 Ill. App. 3d 990, 998, 576 N.E.2d 471, 475.) Thus, a reviewing court is not to reweigh evidence or make an independent

determination of the facts. (*Murdy*, 103 Ill. 2d at 391, 469 N.E.2d at 1088.) Rather, its sole function is limited to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. (*Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434, 437.) This rule, however, does not relieve a reviewing court of its duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. *Carver*, 146 Ill. 2d at 355, 586 N.E.2d at 1277; *Chase v. Department of Professional Regulation* (1993), 242 Ill. App. 3d 279, 285, 609 N.E.2d 769, 773.

■ Moreover, it is well settled that courts will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (*City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149; *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507, 554 N.E.2d 155, 158-59.) An administrative agency's interpretation is not binding, however, and will be rejected when it is erroneous. *Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365, 504 N.E.2d 89, 93-94.

Although the Director in its initial order of revocation found plaintiff "wilfully" violated a provision of the Code, as that term is used in section 505.1(a)(1) of the Code, the Attorney General in this court has abandoned the theory there was a wilful violation, and we therefore do not address it.

■ We conclude, however, the Department, in exercising its expertise with regard to the insurance industry, could reasonably have found plaintiff violated section 505.1(a)(6) of the Code. While there was no showing plaintiff used fraudulent, coercive, or dishonest practices in the transaction of business, we find the failure of plaintiff to inquire into the licensing status of First Columbia at the time he sold the policies, when that information was readily available to him, shows incompetency under the statute. We reject plaintiff's argument that he should not be penalized because no one in the business of selling annuity contracts checks to see if an issuing company is authorized in Illinois. The custom of a trade is relevant but not conclusive in determining what is reasonable; an entire industry may have lagged behind. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 331-32, 211 N.E.2d 253, 257.) The legislature and the Director are not required to accept the practices of those whom they intend to regulate, but may themselves set the standard which must be followed. See *Quinn v.*

*Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 238, 507 N.E.2d 1193, 1198.

Section 122 of the Code provides that it is unlawful for any person to represent a company in violation of the Code; the Code establishes a requirement that agents know whether the company for which they are performing or with which they are entering into contracts has authority to conduct such business in Illinois. It is the duty of the agent to ascertain for himself whether the company is certified in this State. The Director's holding furthers the policy of the Code by protecting the public from the hazards of purchasing insurance from companies not authorized to transact insurance business in Illinois. As the Department testified in the hearing, its data base and annual reports would have provided plaintiff with the necessary information. Moreover, the A.M. Best's reports would also have provided information to plaintiff. Plaintiff stated he was aware of this publication but did not check it when selling the policies at issue. The Department's finding plaintiff was incompetent for failing to verify the company's status prior to the selling of the annuity policies was not contrary to the manifest weight of the evidence.

We likewise find the sanction imposed to be proper. The evidence produced at the hearing showed plaintiff's clients have not recovered any money on their claims, and this money represented a substantial part of their life savings. Revocation of plaintiff's license was not too harsh a penalty, here, where there was a showing of injury to the insureds. Plaintiff will be eligible to apply for a new license in three years. See Ill. Rev. Stat. 1991, ch. 73, par. 1065.52–1(e).

Plaintiff argues a doctor's license is not revoked every time a scalpel slips, and that only actions characterized by wilfullness or similar matters in aggravation should justify revocation of a license, at least in the case of a single occurrence. In this case plaintiff sold policies of an unauthorized company to more than one individual, over a period of time between October 15, 1986, when the company lost its license in Illinois, through March 21, 1988. The sale of these policies did not result from a single slipup, but from plaintiff's practice *never to check* on these companies. The Medical Practice Act of 1987 provides that the license of any person to practice medicine may be revoked for "[a] pattern of practice or other behavior which demonstrates incapacity or incompetence to practice under this Act." (Ill. Rev. Stat. 1991, ch. 111, par. 4400–22(26).) No argument has been made to us which would suggest that the Director could not have found that plaintiff's actions here constituted "[a] pattern

of practice." Even were we to assume the evidence did not establish that plaintiff engaged in a pattern of practice, plaintiff has not attempted to show the legislature could not treat doctors and insurance agents differently. Significant differences would appear to exist between the two, including the fact that the practice of medicine is an art, and insurance agents regularly handle large amounts of their clients' money.

Accordingly, the circuit court's order is reversed and the Director's order revoking plaintiff's license is reinstated.

Reversed.

KNECHT and GREEN, JJ., concur.