VALERI DeCASTRIS, Plaintiff-Appellant, v. STATE EMPLOYEES RETIREMENT SYSTEM *et al.*, Defendants-Appellees.

Fourth District   No. 4—96—0632

Argued February 18, 1997.—Opinion filed May 2, 1997.—Rehearing denied June 10, 1997.

Mark D. DeBofsky and Richard Q. Holloway (argued), both of DeBofsky & DeBofsky, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Huma A. Khan (argued), Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In March 1994, plaintiff, Valeri DeCastris, an employee of the State Department of Public Health (DPH), filed a claim for nonoccupational disability benefits (40 ILCS 5/14—124 (West 1994)) with defendant State Employees Retirement System of Illinois (SERS). In October 1995, the SERS Board of Trustees (Board) concluded that plaintiff had not shown that she was suffering from a disabling condition and denied her claim. In November 1995, plaintiff sought administrative review of the Board's decision, and in July 1996, the circuit court affirmed.

Plaintiff appeals, arguing that the circuit court's order affirming the Board's decision was against the manifest weight of the evidence. We agree and reverse and remand with directions.

## I. BACKGROUND

The underlying facts in this case are undisputed. DPH employed plaintiff as a sanitarian II (toxicologist) from March 1992 through February 1994. Her supervisor described her duties as involving the "review and interpretation of the environmental and health data with the purpose of discerning whether an exposure to chemical or physical agents may result in harm to human or nonhuman life." Plaintiff handled telephone inquiries regarding exposure to chemicals

or physical agents, and she worked out of the office (field work) approximately two or three times per month. With the exception of the field work, plaintiff primarily had a "sitting job." The field work varied from a few minutes to collect a sample to several days to collect multiple samples. The field work occasionally required plaintiff to carry sampling equipment, coolers, or bottles of water. Her duties also required her to use a computer and write and interpret scientific data. Her supervisor testified that a person who was incapacitated in some "intangible nonphysical way" would have difficulty performing plaintiff's job.

In the spring of 1994, plaintiff submitted medical evidence to SERS in support of her claim for nonoccupational disability benefits. The evidence consisted primarily of a report from Dr. Mark Stern, a physician and rheumatologist who had been treating her "for many years" for fibromyalgia, which he described, in part, as "a condition which produces significant soft tissue pain as well as a sleep disorder and irritable bowel."

Dr. Stern certified plaintiff was "temporarily, totally disabled" from both her own occupation and from any occupation. However, he stated she could return to work in 30 days. Dr. Stern classified plaintiff's physical impairment as a "slight limitation of functional activity; capable of light work." He stated she had full, normal range of motion in all joints and normal muscle strength, but also noted that fibromyalgia patients are expected to have normal laboratory test results. He also recommended "a disability leave to begin immediately," explaining that fibromyalgia "is a condition that leads to chronic pain or persistent discomfort."

On July 22, 1994, the SERS claims division sent a memorandum to Dr. Edward G. Ference, identified in the memorandum as "SERS Chief Medical Consultant," informing him of plaintiff's claim and asking him to review the medical information on file "and make a recommendation as to the existence of a disability."

Four days later, Dr. Ference responded in a memorandum that he recommended denial of plaintiff's claim. Despite not having examined—or even seen—plaintiff himself, Dr. Ference disagreed with Dr. Stern's diagnosis of fibromyalgia. In its entirety, Dr. Ference's memorandum reads as follows:

> "This employee claims disability benefits because of chronic fatigue syndrome and fibromyalgia. She has a sedentary work job description. She is being treated with Zoloft.
>
> Actually, she has an anxiety syndrome. All her laboratory findings are normal. She is obese weighing 191-1/2 pounds. (*Dr. Stern calls this fibromyalgia.*)

The activities of daily living are much more stressful and require more strength than the job description of this employee. I do not believe she is disabled from her regular job." (Emphasis added.)

Two days later, a SERS claims examiner sent plaintiff a letter informing her that her file "ha[d] been reviewed by the [SERS'] medical director" and that SERS was temporarily denying her claim (pending review by the SERS Executive Committee (hereafter the Committee)) because "it is the [SERS'] opinion that a disabling condition has not been established."

In August 1994, the same claims examiner wrote to plaintiff that the Committee had met "and moved to deny [her] benefits." The examiner further informed plaintiff that "[t]his constitutes the initial disposition" of her claim by the Committee, but she could appeal this decision and ask for a personal appearance before the Committee.

In September 1994, plaintiff hired an attorney, who pursued the appeal on her behalf. He obtained further reports from Dr. Stern, who provided additional descriptions of plaintiff's condition, including the following:

"The patient's ability to function in a work environment depends on [her] level of pain and fatigue[,] which is not easily and objectively measured. ***

Due to pain, fatigue and global sense of disease, some patients find working impossible and cannot be able to maintain gainful employment. *** [Assessments of such patients] cannot be gauged the same way as the patient who has had loss of limb, vision or stroke and should be taken in consideration just as well."

Plaintiff also had Dr. Scott Morton, another rheumatologist, examine her, and he concurred in Dr. Stern's diagnosis. He wrote in his report, however, that although plaintiff was "temporarily, totally disabled" from her own occupation due to the high level of stress and the physical tasks she was required to do, she was not disabled from all occupations. He thought her disability should continue for an additional 60 days. Dr. Morton described as "moderately severe" plaintiff's degree of restriction of daily activities, including her ability to "attend meetings (church, lodge, etc.), work around the house, socialize with friends and neighbors." He defined "moderately severe impairment" as one which "seriously affects the ability to function." Regarding her ability to do her job, he concluded that she had a "moderate" impairment in her ability to understand, remember, and carry out detailed or complex instructions but had no impairment in her ability to understand, remember, and carry out simple job instructions.

Plaintiff's counsel indicated to SERS that plaintiff wished to appear before the Committee and would be providing further medical material. A handwritten note in the SERS file on plaintiff, dated October 12, 1994, states that plaintiff's attorney "wants to cross-examine Dr. Ference." However, Dr. Ference never appeared in person at any Committee hearing concerning plaintiff and was never cross-examined. The file contains no other reference to the matter.

Plaintiff appeared with her counsel at the Committee's December 1994 meeting and testified as follows: (1) several physicians, including Dr. Stern and Dr. Morton, have treated her; (2) her job required her to review complex data from the private and public sector regarding hazardous waste in water and on land, write technical reports, and interact with the public and various agencies; (3) she was also required to leave the office approximately twice per week to do field work, consisting of collecting samples and reviewing files; (4) when she did field work, the heaviest object she had to carry was 20 pounds, and in the office, she had to carry several boxes of files; and (5) she was required to deal with incoming calls from people who believed they had been exposed to toxic chemicals, and these calls created stress for her.

Plaintiff had been in her current position for approximately two years. Previously, she worked at DPH as a microbiologist. She testified she was very ill at that time and had the Epstein-Barr virus. She was fatigued and could not stand at the lab desk. She experienced problems with increased pain migrating to other areas of her body. She also suffered from irritable bowel and bladder syndrome.

At the Committee's December 1994 meeting, plaintiff indicated she would submit additional medical information, including a report of an examination of plaintiff by Dr. Muhammad Yunus, a rheumatologist who is an expert on fibromyalgia and the author of numerous medical journal articles on that subject. The Committee deferred the case pending receipt of the additional medical information and evaluation.

Subsequently, plaintiff submitted extensive additional medical records and reports of her examination by Dr. Yunus, other physicians, and medical specialists (physical therapists, *et cetera*), as well as articles from medical journals describing the diagnosis and treatment of fibromyalgia. Dr. Yunus found that plaintiff exhibited prominent fibromyalgia symptoms. In sum, these documents comprise over 100 pages of material.

In response, Robert Hicks, supervisor of the SERS disability section, wrote to Dr. Ference and asked him to review plaintiff's case again "to determine if there is documentation of disability." In March

1995, Dr. Ference responded (again without examining or seeing plaintiff), noting that an "MRI of [plaintiff's] neck, done December 5, 1994, shows some narrowing of her disc space and some arthritic changes. There is some bulging of her disc. There is not cord or nerve root compression."

Dr. Ference's (initially *handwritten*) report concluded as follows:

"A letter, dated August 26, 1994, from Mark Stein [*sic*], M.D., a rhematologist [*sic*], was in file. It was non-specific about [plaintiff's] impairment with 'fibromyalgia.' There are also two reprints in file, from Dr. Yunus dated February, 1990, and Donna Howley, et al., dated 1988. This last article is not by an M.D.

Again, based on the evidence in file and her job description of sedentary work, I do not believe she is disabled from her regular job. Activities of daily living involve more than sedentary work."

However, a careful reading of these articles (which are in the record before us) reveals that Howley was a professor of nursing and her coauthor not only was a medical doctor, but specifically distinguished in the field of fibromyalgia.

In April 1995, the deposition of plaintiff's DPH supervisor was taken, and plaintiff asked SERS to consider all the evidence before it. Hicks sent a memo to Dr. Ference again asking him to review plaintiff's file. Dr. Ference responded shortly thereafter—yet again without examining or seeing plaintiff—and in a six-line report (one line of which was devoted to pointing out how he had twice before examined this same file), he concluded that "[t]here is nothing added to this file from my last review that has changed my opinion that this employee is not disabled from her regular job."

In late June 1995, plaintiff submitted an additional, updated report from Dr. Stern to SERS. Hicks, in turn, sent the new material to Dr. Ference, asking him "to review and comment." In response, Dr. Ference submitted his fourth—and last—report in this case, which in its entirety reads as follows:

"I have reviewed this file before (three times).

Again, there is nothing new added to the file that would change my opinion from the three prior reviews. She can perform her regular duties."

As before, Dr. Ference submitted this report without examining or seeing plaintiff.

In July 1995, the Committee voted to recommend that the Board deny plaintiff's claim for disability benefits. In October 1995, the Board followed that recommendation, denied plaintiff's claim, and issued its "final decision" on the matter.

In November 1995, plaintiff filed a complaint in circuit court

seeking administrative review of the Board's decision, and in July 1996, the circuit court affirmed the Board's decision.

## II. ANALYSIS

### A. Jurisdiction

Defendants first argue that this court should dismiss the case because the circuit court lacked authority to review the Board's decision. They note plaintiff's complaint for administrative review named as defendants only the "State Employees Retirement System of Illinois" and "Michael Mory, as Executive Secretary." Defendants maintain that the Board was the final decision maker in the administrative process, and because the Board made the final and binding agency decision in this case, it was a necessary party on administrative review. We disagree.

■ Section 3—107(a) of the Administrative Review Law (Review Law) provides, in pertinent part, as follows:

> "[I]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants.
>
> If, during the course of a review action, the court determines that a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, and only if that party was not named by the administrative agency in its final order as a party of record, then the court shall grant the plaintiff 21 days from the date of the determination in which to name and serve the unnamed party as a defendant. The court shall permit the newly served defendant to participate in the proceedings to the extent the interests of justice may require." 735 ILCS 5/3—107(a) (West Supp. 1995) (as amended eff. December 15, 1995).

■ In *Lockett v. Chicago Police Board*, 133 Ill. 2d 349, 354, 549 N.E.2d 1266, 1268 (1990), the supreme court said that the joinder requirement of section 3—107 of the Review Law is "mandatory." In *Mudd v. Department of Children & Family Services*, 281 Ill. App. 3d 90, 666 N.E.2d 360 (1996), this court applied the holding in *Lockett* to determine whether the Director of Central Management Services was a necessary party under section 3—107(a) of the Review Law. The defendants in *Mudd* argued that the Director was a necessary party because the final order of the Illinois Civil Service Commission stated the order was " 'certified to [him]' " for enforcement and also stated he had approved the charges for dismissal. *Mudd*, 281 Ill. App. 3d at 92, 666 N.E.2d at 362. In *Mudd*, this court noted that *Lockett*

did not say joinder was a jurisdictional requirement. Further, in *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1, 12, 649 N.E.2d 404, 410 (1995), the supreme court explained that although the joinder requirement was mandatory, it was not jurisdictional.

Finally, in *Mudd*, as here, the question of lack of joinder was not raised before the circuit court. In *Mudd*, this court deemed the issue waived because it did not involve jurisdiction. *Mudd*, 281 Ill. App. 3d at 92-93, 666 N.E.2d at 362. Accordingly, although plaintiff failed to name the Board as a defendant within the meaning of section 3—107 of the Review Law, we conclude—based on *Mudd*—that defendants have waived the issue of lack of joinder.

## B. Standard of Review

■ Judicial review under the Review Law extends to all questions of law and fact presented by the entire record. The Review Law mandates that this court deem the findings and conclusions of an administrative agency on questions of fact *prima facie* true and correct and not disturb them unless they are against the manifest weight of the evidence. 735 ILCS 5/3—110 (West 1994). In *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992), the supreme court noted that the court's function under administrative review is to ascertain whether the findings and decisions of the agency are against the manifest weight of the evidence, and they are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. However, in *Cherington v. Selcke*, 247 Ill. App. 3d 768, 776, 617 N.E.2d 514, 519 (1993), this court noted that this rule does not relieve a reviewing court of its duty to examine the evidence in an impartial manner and to set aside an order which the evidence does not support.

## C. The Administrative Decision

■ Plaintiff argues here that the Board's decision must be set aside because it lacks evidentiary support. We agree.

Plaintiff presented substantial evidence from her treating and examining physicians, most notably Drs. Stern and Morton, who repeatedly certified plaintiff was disabled due to fibromyalgia. In addition, Dr. Yunus, an expert in the field of fibromyalgia, evaluated plaintiff twice and concurred that she exhibited "prominent symptoms of fibromyalgia."

The only contrary "evidence" (using the term liberally) appeared in Dr. Ference's reports. However, he never saw plaintiff—much less

examined her—and dismissed the diagnosis of her fibromyalgia without providing any basis for his opinion. Nor does the record contain any explanation—or justification—for his disregard of the other physicians' diagnoses. Moreover, while Drs. Stern, Morton, and Yunus are rheumatologists, the record contains no evidence (indeed, no hint) of Dr. Ference's background or specialty.

Plaintiff presented ample evidence to establish a *prima facie* case of disability. By presenting only Dr. Ference's reports, SERS failed to rebut plaintiff's evidence, particularly in view of the manifest deficiencies in Dr. Ference's reports.

This case does not involve a disagreement among experts as to the extent of a plaintiff's injury or illness, such as is frequently the case when experts differ about, say, how quickly a plaintiff's damaged vertebrae might heal and how much permanent disability a plaintiff might suffer as a result of the injury. Instead, this record reveals a dispute among the medical witnesses as to whether a diagnosis of fibromyalgia *bears any medical legitimacy at all*. This distinction is important because it removes this case from the routine medical-dispute situation where this court's deference to the fact finder should be very high. In the present case, this court must first evaluate the sufficiency of the evidence in this record to support Dr. Ference's rejection of fibromyalgia as a legitimate medical condition. We find none, and at oral argument, defendants could not point to any, either.

Plaintiff presented ample evidence from three physicians who are specialists in rheumatology that she has a disease, fibromyalgia, and her doctors have certified that her disease is disabling. The only contrary "evidence" SERS presented was that Dr. Ference doubts the medical legitimacy of fibromyalgia, yet neither SERS nor Dr. Ference provided any basis for his opinion—or his expertise. Accordingly, we hold that the Board's reliance on Dr. Ference's opinion was against the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we reverse the circuit court's judgment and remand to that court with directions to remand to the agency with directions to award benefits to plaintiff.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.