STEVEN A. RHOADS, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE CITY OF CALUMET CITY POLICEMEN'S PENSION FUND, Defendant-Appellant.

First District (5th Division)   No. 1—96—1920

Opinion filed December 26, 1997.

Richard J. Puchalski and Richard J. Reimer, both of Sklodowski, Franklin, Puchalski & Reimer, of Chicago, and Stanley W. Pagorek, of Law Offices of Stanley W. Pagorek, of Calumet City, for appellant.

Stanley H. Jakala, of Berwyn, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, Steven Rhoads (Rhoads), brought this action seeking review of an administrative decision of the City of Calumet City Police Pension Board (Pension Board) granting him a not-on-duty disability pension under section 3—114.2 of the Illinois Pension Code (the Pension Code) (40 ILCS 5/3—114.2 (West 1994)), based upon the salary of $49,800. The circuit court reversed the Pension Board's decision and order as against the manifest weight of the evidence. The circuit court concluded Rhoads should have received a line-of-duty pension under section 3—114.1 of the Pension Code (40 ILCS 5/3—114.1 (West 1994)), which pays 65% of salary, rather than a not-on-duty pension, which pays 50% of salary. The circuit court also determined Rhoads' pension was affected by a retroactive pay raise, finding his pension should have been based on a salary of $59,556. We disagree.

The Pension Board presents three issues for resolution: (1) whether Rhoads' failure to name the individual Pension Board trustees as defendants deprived the circuit court of jurisdiction; (2) whether the Pension Board's decision to award Rhoads a not-on-duty disability pension rather than a duty disability pension was against the manifest weight of the evidence; and (3) whether the Illinois Pension Code permits the city council to retroactively alter a police officer's salary for purposes of pension calculation after the officer's employment has ended, when no future service is contemplated and

no contribution provision is attached. The Pension Board also counters Rhoads' argument that the City of Calumet City's lump-sum settlement of Rhoads' workers' compensation claim is binding on the Pension Board under the doctrine of collateral estoppel as to the causation of Rhoads' injury.

Before commencing employment with the City of Calumet City, Rhoads sustained a knee injury to his right leg, which required arthroscopic surgery and resulted in a workers' compensation award against his former employer, the City of East Hazel Crest. Rhoads received his appointment as chief of police of the City of Calumet City on May 24, 1988, and was accepted into the policemen's pension fund in August of 1988. On May 11, 1993, Rhoads submitted his application for a line-of-duty disability pension. Rhoads was terminated from his position as police chief on May 13, 1993.

On November 29, 1993, Rhoads amended his disability pension application to reflect that he was seeking either a line-of-duty pension or a not-on-duty pension. In his application, Rhoads sought a disability pension based upon the stated salary of $49,800, the salary under which he had made pension contributions. In March of 1994, approximately 10 months after Rhoads' discharge on May 13, 1993, the city council passed an ordinance granting the chief of police a pay increase to the salary of $59,556. The ordinance purportedly was made retroactive to May 1, 1993.

Before the Pension Board, Rhoads alleged two incidents caused him to become disabled, one occurring on September 24, 1988, and a second occurring on July 30, 1991. As to the 1988 incident, Rhoads alleged he injured his left knee when his arm became trapped in the window of a car whose driver attempted to drive away to avoid being snared in a prostitution "sting," dragging Rhoads. In August of 1991, the Industrial Commission approved a lump-sum workers' compensation settlement from Calumet City in the amount of $21,945.70 for Rhoads in regard to the 1988 incident. In addition, Calumet City later obtained a workers' compensation lien in connection with a settlement Rhoads received in a civil suit against the employer of the person driving the car involved in the 1988 incident. As to the 1991 incident, Rhoads claimed he reinjured his knee when he was kicked in the left shin while subduing a violent arrestee.

Rhoads was sent to three physicians selected by the Pension Board, and each of these physicians certified that Rhoads was disabled when the doctor examined him. Rhoads was examined by these doctors during the months of May and June 1993.

A fourth physician, Dr. Meis, testified he had performed three separate surgeries on Rhoads' knee: the first on December 1, 1988,

the second on August 2, 1989, and the third on May 22, 1990. In Dr. Meis' opinion, Rhoads was disabled and unable to perform the duties of a police officer since October 8, 1990. Dr. Meis also rendered the opinion there was a possible causal connection between Rhoads' left knee injury and the 1988 incident in which Rhoads alleged his left arm was trapped in the window of a car.

Given the medical evidence and certificates of disability, the Pension Board concluded that Rhoads was unable to perform the duties of a police officer and that he had been medically disabled from approximately October 8, 1990. Although the Pension Board determined Rhoads was disabled, it found he had not proved he received his injuries in the line of duty. The Pension Board found Rhoads' demeanor and his account of the incidents alleged to have caused his injuries "unpersuasive [and deemed] *** his testimony *** not credible, not honest, inconsistent and unreliable and at best, both are suspect."

The Pension Board further concluded that Rhoads' not-on-duty disability pension should be based on a salary of $49,800, not $59,556, the salary recently allocated to the office of police chief. All five members of the Pension Board signed the administrative decision on January 31, 1995, granting Rhoads a not-on-duty disability pension pursuant to section 3—114.2 of the Illinois Pension Code. 40 ILCS 5/3—114.2 (West 1994).

Reversing the Pension Board's decision, the circuit court stated the Board failed to suggest plausible alternative theories regarding Rhoads' injuries and faulted the Board for failing to present evidence to refute either the 1988 or the 1991 incident. The circuit court concluded the Pension Board had exercised its authority in an arbitrary and capricious manner and that its decision was against the manifest weight of the evidence.

The circuit court further determined there was sufficient medical evidence in the record to show that Rhoads was injured while on duty. The court also concluded the city council had the authority to pass a retroactive pay raise for the chief of police in the amount of $59,556 and that it passed such a raise on March 11, 1994. Observing that the ordinance passed by the city council was retroactive to May 1, 1993, the circuit court determined the ordinance affected Rhoads' disability pension because he was still in office during the period covered by the retroactive action.

■ As a threshold matter, the Pension Board alleges Rhoads' failure to name the individual Pension Board trustees as defendants deprived the circuit court of jurisdiction. We disagree. At issue are the procedural requirements of the Administrative Review Law,

specifically section 3—107(a). 735 ILCS 5/3—107(a) (West 1994). The newly amended version of section 3—107(a), effective June 1, 1997, appears no longer to require the joinder of individual pension board trustees to invoke jurisdiction under administrative review. 735 ILCS 5/3—107(a) (West Supp. 1997). If this version applies, Rhoads' failure to name the individual board trustees is not fatal.

In *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 290, 664 N.E.2d 36, 39-40 (1996), the supreme court explained a statutory amendment can be applied to an existing controversy on appeal unless doing so would interfere with a vested right. Applying this principle in *Martin v. Department of Professional Regulation*, 284 Ill. App. 3d 591, 596, 672 N.E.2d 267, 270-71 (1996), a panel of this court concluded that the then newly amended 1994 version of section 3—107(a) applied to that case on appeal, as it was the law existing at the time of the appeal and did not interfere with a vested right. Similarly, the amended 1997 version does not interfere with a vested right and applies to this appeal. Therefore, Rhoads' failure to name the individual trustees as defendants did not divest the circuit court of jurisdiction under the Administrative Review Law.

Having determined the circuit court possessed jurisdiction, we conclude the circuit court's reversal of the Pension Board's decision was improper. Initially, Rhoads argues the lump-sum workers' compensation settlement he received from Calumet City collaterally estopped the Pension Board from relitigating the issue of whether his disability resulted from an act of duty. Collateral estoppel precludes a party from relitigating an issue already decided in a prior proceeding. *Talarico v. Dunlap*, 177 Ill. 2d 185, 685 N.E.2d 325 (1997).

For collateral estoppel to apply, the following requirements must be met: (1) the issues must be identical; (2) a final judgment on the merits must have been obtained in the previous adjudication; and (3) the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication. Additionally, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit. *Talarico*, 177 Ill. 2d at 191, 685 N.E.2d at 328. Nevertheless, even where the elements of collateral estoppel are satisfied, the doctrine must not be applied "unless it is clear that no unfairness results to the party being estopped." *Talarico*, 177 Ill. 2d at 191-92, 685 N.E.2d at 328.

We recognize that in *McCulla v. Industrial Comm'n*, 232 Ill. App. 3d 517, 520-21, 597 N.E.2d 875, 878 (1992), a panel of this court found that a workers' compensation claimant was barred from relitigating the issue of causation subsequent to his unsuccessful adjudication of

that issue before the pension board. In so doing, we also recognize that the claimant in *McCulla*, the party against whom collateral estoppel was asserted, "had a full opportunity to adjudicate the issue of the work-related nature of his disability before the pension board." *McCulla*, 232 Ill. App. 3d at 521, 597 N.E.2d at 878.

■ Nevertheless, we agree with the reasoning of *Hannigan v. Hoffmeister*, 240 Ill. App. 3d 1065, 1076, 608 N.E.2d 396, 404-05 (1992), and find that the Pension Board was not collaterally estopped from litigating the issue of causation in this case. There is no evidence of any collaboration between Calumet City and the Pension Board as to the settlement agreement. Nor are we prepared to accept Rhoads' assertion that the parties, Calumet City and the Pension Board, are the same merely because they are both public entities, especially where that assertion is employed to support Rhoads' use of collateral estoppel as to his workers' compensation agreement against the Pension Board. See *Hannigan*, 240 Ill. App. 3d at 1076, 608 N.E.2d at 404 (concluding two state agencies were not identical parties, that claims under the Pension Code and under the Workers' Compensation Act present different claims, and that the Industrial Commission is not a court of competent jurisdiction to decide pension benefits). More generally, the lack of privity between the parties is supported by the distinct identity, constituency, and interest of the Pension Board.

In so ruling, we are aware that in *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696, 698, 279 N.E.2d 55, 56-57 (1971), the court found that the city was the real party in interest in both the Industrial Commission hearing and the proceedings before the trustees of the city's police pension fund. However, noting the distinct facts of that case, we depart from it. Because we find the identity-of-parties element lacking, we need not reach the issue of whether the workers' compensation settlement agreement resolved the same issue examined by the Pension Board.

■ Having determined that the Pension Board's inquiry into the causation issue was proper, we must next decide whether the circuit court erred in reversing the Pension Board's decision. The findings and conclusions of an administrative agency on questions of fact are deemed *prima facie* true and correct and are not to be disturbed unless they are against the manifest weight of the evidence. 735 ILCS 5/3—110 (West 1994). In *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992), the supreme court explained the court's role is to determine whether the agency's findings and decisions are against the manifest weight of the evidence and noted they are against the manifest weight of the evidence only if the opposite conclusion is clearly evident.

Moreover, the mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *DeCastris v. State Employees Retirement System*, 288 Ill. App. 3d 136, 143, 679 N.E.2d 825, 830 (1997). Additionally, "because the weight of the evidence and the credibility of the witnesses are within the province of the board, there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691, 694 (1992). Nevertheless, a reviewing court does retain its duty to examine the evidence in an impartial manner and to set aside an order that the evidence does not support. *Cherington v. Selcke*, 247 Ill. App. 3d 768, 776, 617 N.E.2d 514, 519 (1993). In this case, the circuit court recited the correct standard of review but impermissibly reweighed the evidence, independently determined the credibility of the witnesses, and substituted its judgment for that of the Board.

■ The Pension Board does not dispute the fact that Rhoads is disabled. Instead, it disputes the cause of Rhoads' injury, finding Rhoads' explanation not worthy of belief. The Pension Board listed numerous reasons for its disbelief: (1) Rhoads had attempted to prevent the agency from obtaining certain employment records; (2) in violation of a witness-exclusion order, Rhoads discussed certain testimony with a prospective witness prior to that person testifying; (3) Rhoads' testimony was contradicted by that of other witnesses; (4) Rhoads' actions after his first allegedly disabling injury were inconsistent with an on-duty injury, in that Rhoads failed to initially state in the "General Offense Case Report" that he sustained the 1988 injury and no criminal charges were ever lodged against the person who allegedly caused that injury.

The Pension Board also considered the fact that Rhoads did not complain of injury to his left knee during the 1988 incident, but did complain of damage to a new pair of tennis shoes. The Pension Board found Rhoads' claim of medical treatment after the 1988 incident suspect since Rhoads produced no record of that treatment. The Pension Board noted Rhoads' testimony as to the 1991 incident was not corroborated by the arresting officers and that the report of personal injury prepared by Rhoads for that incident was not corroborated by anyone other than Rhoads.

Additionally, the Pension Board considered the issue of timing, concluding that Rhoads filed his application for a disability pension two days before he was discharged, when he knew he would not be retained as police chief. The Pension Board concluded Rhoads was in fact disabled; however, it granted Rhoads a not-on-duty pension, find-

ing Rhoads had not proved that he was disabled in the line of duty. Where, as in this case, there is ample evidence in the record to support the Pension Board's finding, it must stand.

■ Finally, we conclude the city council's purportedly retroactive salary increase does not apply to alter Rhoads' salary for purposes of his pension. Under section 3—114.1 of the Pension Code, a duty disability is computed on "the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement." 40 ILCS 5/3—114.1 (West 1994). Pursuant to section 3—114.2, those receiving a not-on-duty pension are "entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." 40 ILCS 5/3—114.2 (West 1994). Moreover, section 3—125.1 of the Pension Code defines "salary" as:

> " 'Salary' means the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit not included in the salary so established." 40 ILCS 5/3—125.1 (West 1994).

Under the terms of the Pension Code, Rhoads is entitled to a pension based on a percentage of the "salary attached to the officer's rank on the police force [held by him] at the date of suspension of duty or retirement." 40 ILCS 5/3—114.2 (West 1994). No rule of statutory construction authorizes us to declare the legislature meant something other than what the plain language of its statute states. *DiFoggio v. Retirement Board of County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 382-83, 620 N.E.2d 1070, 1073 (1993). Rhoads left his position as police chief on May 13, 1993. On that date, the salary attached to the rank of police chief was $49,800; therefore, that salary applies for purposes of calculating Rhoads' pension. Consequently, we find the circuit court erred in reversing the Pension Board's decision as to the type of pension Rhoads is to receive and as to the salary upon which it is based.

Reversed.

GREIMAN and QUINN, JJ., concur.